IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KAREN FELD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:08-cv-01557-ESH |
| v. ) | |
| ) | |
| **KENNETH FELD, et al.,** ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS SUBPOENAED FROM PETA

Pursuant to Fed.R.Civ.P. 45, Defendants Kenneth Feld and Feld Entertainment, Inc. ("FEI"), by and through their undersigned counsel, hereby respond to and oppose the Plaintiff's Motion to Compel documents from PETA (1/22/10) (Docket # 47) ("Motion") as follows:

### INTRODUCTION

This case arises solely from the disturbing conduct of Karen Feld on September 26, 2007. That particular evening was the second night of the *shiva* held for Aunt Shirley Feld.[1] Both family and friends had gathered at Aunt Shirley's home to pay their respects, share their memories, and mourn the loss of a lovely elderly woman. Even though Karen Feld had been estranged for decades from Shirley Feld prior to her death, the Feld family nevertheless attempted to include Karen in their grieving and permitted her to attend the *shiva* held in Aunt Shirley's home. In response to this act of kindness and inclusion by the family, Karen disrupted the *shiva* by lashing out in a violent, vulgar rage that both ruined the service, and frightened and upset others who were there. That solemn occasion, which Karen should have treated with

---

[1] Consistent with prior briefing practices, first names will be used due to the common surname in order to avoid confusion. No disrespect is intended thereby.

respect and reverence, was instead – as one eye witness has already testified – "desecrated" by her. Karen's vicious behavior that night, whatever the cause – psychological, pharmacological and/or physiological – was not that of a sane or rational person. Karen's rendition of events as filed in the Complaint in this case is likewise fictional, and Defendants fully intend to demonstrate this to the Court and, if need be, a jury.[2]

Thus, the evening of September 26, 2007 is the focal point of this case – the events that *actually* occurred that night, the damages that allegedly ensued, and the true cause of them. Rule 26 of the Federal Rules of Civil Procedure, even with the liberal leeway it permits, still requires that discovery in this case somehow relate *to this case*. The subpoenaed materials now at issue do not.[3] This particular Motion has absolutely nothing to do with the *shiva* events, Karen Feld's medical condition(s), or the causation thereof. Instead, it is a misguided effort to harass Defendants by forcing them to re-litigate other irrelevant, unrelated cases that have already been resolved and, we suspect even more importantly for Plaintiff, to divert attention from the real issues in this case: the events during and after the *shiva*, Karen Feld's own conduct therein, her alleged injuries, and, if any, their real causes.

For example, the deposition transcripts sought by the Motion originate from four different pieces of litigation, each with its own protective order(s) sealing them: Ex. 2,

---

[2] Having progressed beyond the Rule 12 dismissal stage of the case, Karen no longer enjoys the procedural benefit and protection of being entitled to the "presumption of truth" for her complaint. Defendants maintain that there is very little, if anything, that is true in her complaint.

[3] On January 5, 2010, Plaintiff issued a document subpoena to PETA seeking trial and deposition transcripts, which is the subject of the instant Motion. Plaintiff provided defense counsel with a "courtesy copy" of the subpoena, which does not contain proof of service. See Ex. 1, PETA subpoena *duces tecum* ("Subpoena"). Based on our prior experiences with PETA on this very same issue two years ago in the ASPCA v. Feld Entertainment, Inc., Civil Action No. 03-2006-EGS-JMF case, we have no reason to believe that PETA was ever served with the subpoena, but instead, willingly accepted and/or invited the Subpoena from plaintiff's counsel.

Confidentiality Order, Performing Animal Welfare Society, et al. v. Feld Entertainment, Inc. et al., Civil Action No. S-00-1259 GEB DAD (2000); Ex. 3, Protective Order, Sparshott v. Feld Entertainment, Inc. and Charles F. Smith, Civil Action No. 1:99cv551 JR (1999); Ex. 4, Protective Order, Pottker, et al v. Feld, et al, Civil Action No. 99-8068 (1999); and Ex. 5, three Protective Orders, the PETA cases, Civil Action Nos. 220181 & 204452. One of the cases, Pottker, et al v. Feld, et al, Civil Action No. 99-8068 (1999), has been concluded and sealed by final court order. See Ex. 6, Consent Order Dismissing Claims with Prejudice and Disposing of Other Issues in Lawsuit (11/20/08) (Zeldon, J.) ("Dismissal Order").[4]

Karen Feld was neither a party nor a deponent in any of these cases. Nor did those cases involve allegations or claims like those alleged here: e.g. assault, battery, false imprisonment.[5] Cf. Motion at 4 (the PETA cases involved allegations that defendants "*conspired to damage the plaintiffs in their trade or business*, and that the defendants utilized the services of detectives and other contractors in furtherance of such conspiracy.") with Motion at 3 ("As noted above, *Plaintiff has alleged that she was assaulted by security contractors* working for her brother or

---

[4] Almost all of the various transcripts at issue were ordered produced to PETA during discovery by Judge Stitt in the PETA cases in Fairfax. Defendants have steadfastly maintained that Judge Stitt's production order was erroneous, and violated the jurisdiction of other courts and the protective orders lawfully entered by them. Defendants ultimately produced the transcripts in order to avoid contempt of court, which required them to obtain permission to do so. See, e.g., Ex. 7, Order Granting Motion to Produce Sealed Deposition Transcripts(5/11/04) (Hedge, J.). Notably, the production in the PETA cases occurred before the final sealing order in the Pottker case was entered. See Ex. 6, Dismissal Order. Some of the depositions originated in the PETA cases, and they too were designated as confidential under the protective orders entered in the PETA cases. See Ex. 5, PETA protective orders.

[5] Although both the Sparshott and Pottker cases involved claims of intentional infliction of emotional distress, each of those claims was predicated on factual allegations that were different from this case and did *not* include assault, battery or false imprisonment. As the names of the other cases indicate (PAWS and PETA), those suits were part of the longstanding, ongoing animal activist campaign against the circus, Feld Entertainment, and Mr. Feld personally which are completely different from the facts and claims at issue here.

FEI, and, further, that the Defendants regularly employ and control contractors of this type."). Thus, even plaintiff admits in her own Motion that the litigation is different.

The subpoenaed materials seek testimony that was taken *years* (anywhere from approximately 2000--2006) before the *shiva* occurred.[6] Eight of the witnesses identified in Request No. 1 did not attend the *shiva*.[7] In fact, two of them (Alan Bloom and Richard Froemming) pre-deceased Shirley Feld. Regardless of whether it is sealed deposition testimony or the public PETA trial testimony, the transcripts are neither relevant nor are they reasonably calculated to lead to the discovery of admissible evidence. The Motion should be denied, the Subpoena should be quashed, and this Court should require that discovery in this case remain focused on and about this case.

## ARGUMENT

I.  **Defendants Can and Have Properly Objected to the Subpoena: Plantiff Refused to Confer.**

The Motion claims, without any citation or other support, that "there is no authority in Rule 45 for anyone other than Respondent [PETA] to interpose an objection to the subpoena." (Motion at 3). This is not an accurate statement of the law as evidenced by plaintiff's recent motion to quash third-party subpoenas to which she objects. See Plaintiff's Motion to Quash Subpoenas and for a Protective Order (2/4/10) (Docket # 50). Defendants have privileged,

---

[6] See Ex. 8, Correspondence and Notice of Objection to PETA Subpoena at No. 1 (1/19/2010) ("Objection") (PETA discovery closed in January 2006 and concerned events that pre-dated Mr. Smith's departure from FEI in March 1997); Ex. 9, Pottker Objection at No. 1 (fact depositions were completed in 2003). Defendants incorporate fully both sets of objections herein by reference even if not cited or elaborated on specifically above.

[7] Request No. 2 of the Subpoena is incapable of response because it is vague and calls for a legal conclusion, without identifying by name, the individual(s) whose testimony is sought. Defendants timely objected to this, and the request remains un-revised since. See Ex. 8, Objection. Request No. 2 should be quashed for this reason alone as well as for all of the other reasons set forth herein.

proprietary, confidential and personal interests in the subpoenaed matter which gives them the right to object to the production. In the various cases, they either provided testimony and/or produced transcripts subject to various protective orders in those cases ensuring their confidentiality. As such, they have standing to challenge the Subpoena. See Dart Indus., Inc. v. Liquid Nitrogen Processing Corp., 50 F.R.D. 286, 291-92 (D. Del. 1970) (parties' interest in preserving protective orders provided standing) (production limited to documents not covered by protective orders: "This Court does not want its process colliding with orders of a co-ordinate Federal court."); Washington v. Thurgood Marshall Academy, 230 F.R.D. 18, 21 (D.D.C. 2005) (party lacks standing to challenge third party subpoena *unless* party has a claim of privilege, proprietary or personal interest in subpoenaed material) (striking motion to compel that failed to provide specific points of law and authority in support of motion); Dunkin' Donuts Franchised Restaurants LLC v. Grand Central Donuts, Inc., 2009 WL 973363, *1 (E.D.N.Y. Apr. 9, 2009) (party with privacy interest in confidentiality of records sought has standing to challenge subpoena).

Defendants timely and properly presented their objections to Plaintiff and PETA. See Ex. 8, Correspondence and Notice of Objection to PETA Subpoena (1/19/10) ("Objection"); Ex. 9, Objection letter as to Pottker discovery (12/11/09) (incorporated by reference in Objection) ("Pottker Objection"). Defendants' counsel asked whether Plaintiff would withdraw the Subpoena, and if she was unwilling to do so, then to explain the connection to the claims in this case upon which she is purporting to proceed. Id. at 1-2. Plaintiff never responded to this request and never conferred with Defendants prior to filing to instant Motion. Nor did PETA provide defense counsel with its January 20, 2010 letter objection or otherwise respond to Defendants. Ex. 10, Hirschkop letter to Oster (1/20/10). Instead, Plaintif's counsel gave the

PETA letter to defense counsel during a deposition on the afternoon of January 21, 2010 without saying a word about the dispute, how to proceed or any motion practice. Plaintiff filed this Motion the next day without any notice. Having elected to ignore LCvR 7(m), Plaintiff's counsel cannot now be heard on procedural objections regarding how the Motion arose.[8] Moreover, as demonstrated below, Plaintiff does not explain in her Motion either why any of the material sought is supposedly relevant or discoverable.

## II.   The Court Must Determine Which Case(s) Will Be Litigated Here and Set Appropriate Boundaries for Discovery Going Forward.

### A.   The Discovery Sought Is Unrelated to This Case

For a movant to prevail on a motion to compel, the movant's initial motion must show the relevancy of the information sought. Alexander v. FBI, 186 F.R.D. 185, 187 (D.D.C. 1999) (holding that plaintiffs' motion, which consisted of only two pages of insufficient legal analysis and a cursory recitation of the facts, was not enough to meet their burden to prove relevancy). "When a party seeks to compel discovery, it first has the burden of demonstrating the relevance of the information to the lawsuit." Bethea v. Comcast, 218 F.R.D. 328, 329 (D.D.C. 2003) (holding that conjecture as to the relevancy of information sought does not warrant compelled inspection of information likely to contain large amounts of irrelevant content). Cf. Ex. 8, Objection at No. 9 (objecting to any transcript that, in whole or in part, contains matters not related to subject matter of this case).

---

[8] Judge Huvelle prohibited the parties from filing discovery motions in the Scheduling Order for this action. Defendants were unaware that this prohibition on motions practice had been lifted. Defendants presume that the stay on discovery motions has been lifted now, because Plaintiff has recently filed two Motions without leave of court or prior notice to defense counsel. See Motion (Docket # 47) & Motion to Quash Subpoenas (Docket # 50).

Plaintiff has not met her burden. She makes absolutely no effort to explain why any of the subpoenaed material is relevant. She simply states presumptively that

> In the instant case, Plaintiff intends to introduce evidence of her brother's long-standing animosity towards her and his efforts at interfering with and otherwise impeding her professional and personal affairs. The testimony requested is limited to that of the individual Defendant and those acting on behalf of the corporate Defendant who may have authorized and/or participated in such efforts.

Motion at 4. We can conceive of no basis, evidentiary or other, by which Plaintiff would be entitled to "introduce evidence" regarding such matters in this case. First, the accusations are false. Mr. Feld has done no such thing with regard to his sister, and despite whatever animosity Karen cultivates against the Feld family, it is not reciprocated. Nor has FEI interfered with or impeded Karen's professional or personal affairs. Second, this lawsuit arises from and relates to the events occurring at the *shiva* in September 2007. The claims are for assault, battery, intentional infliction of emotional distress, and false imprisonment. The elements of those claims do not include "longstanding animosity." They are intentional torts that require intent for the underlying conduct, i.e., assault, battery, etc. Whatever issues plaintiff may think she has with regard to her professional and personal affairs, they are not part of this lawsuit.

Tellingly, when faced with *producing* rather than taking discovery, Plaintiff invokes the opposite position regarding the scope of this case. For example, rather than complying with the agreement of counsel and subsequent court order to produce her tax returns on December 18, 2009, plaintiff ignored this and provided the following response:

> Document Request No. 7 (plaintiff's federal and state income tax returns from the past ten years and all other records pertaining to any alleged loss of wages or earning capacity by plaintiff).
>
> **Response: Plaintiff makes no such allegation.**

Ex. 11, Plaintiff's Verified Supplemental Discovery Responses (1/6/10) (emphasis in original).

Here is how plaintiff described this case to the Court in her recent motion to quash that was filed in a further effort to hide her medical records:

> This is a straightforward case in which the Plaintiff alleges that her brother, Kenneth Feld, caused the Plaintiff to be assaulted at a *shiva* held when their aunt passed away in 2007. Plaintiff alleges that she was assaulted by security personnel hired and/or under the control of her brother and his co-defendant, Feld Entertainment, Inc. (of which Kenneth Feld is CEO). Kenneth Feld has brought a counterclaim against the Plaintiff alleging trespass based on the allegation that the Plaintiff entered the non-public area of the *shiva*, which was held at the apartment in which she and the Defendant spent a good part of their childhood.

Pl's Mem. to Motion to Quash Subpoenas at 2 (2/4/10) (Docket # 50-1).

Plaintiff and her counsel are not being candid with the Court. In their own words found elsewhere in the record of this case, they admit that this case has nothing to do with animal rights, "detectives," or "conspiracy to damage trade or business." Cf. Motion at 4. The Court should hold Plaintiff to her Complaint allegations and her briefing representations to the Court. Plaintiff should be prohibiting from injecting irrelevant, concluded matters into this lawsuit.

Not unexpectedly, the law has developed since the 1960's caselaw that plaintiff relies on for the sweeping proposition that the Federal Rules of Civil Procedure permit "unrestricted access to sources of information [during discovery]." (Motion at 4). Contrary to plaintiff's argument, even Rule 26 has its limits. Crawford-El v. Britton, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."). All discovery sought must be both relevant *and* it must be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); see also Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("the relevance standard of Rule 26 is not without bite"); Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 6 (D.D.C. 2007) ("discovery of matters not 'reasonably calculated to lead to the

discovery of admissible evidence' are not within the scope of discovery"); Smith v. Café Asia, No. 07-261, 2007 U.S. Dist. LEXIS 73071, at *3-4 (D.D.C. Oct. 2, 2007) (Facciola, J.) ("[R]elevancy alone does not entitle a requesting party to *carte blanche* in discovery. As with most things in life, Rule 26 is not an all-or-nothing proposition. One important constraint is the admissibility of the discovery being sought.") (internal citations omitted).

The subpoenaed material does not satisfy the standards of Rule 26. It is not reasonably calculated to lead to the discovery of admissible evidence or relevant to the case. The Motion should be denied and the Subpoena should be quashed in its entirety.

### B.     Defendant Should Not Be Required to Re-litigate Other Cases Here

Because the discovery sought is not relevant to this lawsuit, Defendants have objected to it as harassing, vexatious, and imposing an undue burden on them by making them re-litigate cases that are already concluded. Ex. 8, Objection at Nos. 1 & 4; Ex. 9, Pottker Objection at No. 2. FEI was able to resolve amicably its case with PAWS nearly a decade ago. FEI prevailed on appeal in the Sparshott case in 2002. Mr. Feld won his trial against PETA in 2006. Ex. 12, Jury Verdict Form and Special Interrogatories with Final Order (3/15/06). The Pottker case concluded in 2008. Ex. 6, Dismissal Order. None of those cases are relevant to this one. Defendants should not be required to re-litigate them here, particularly when the request is based on Plaintiff's speculation. See Motion (testimony subpoenaed is limited to those "who *may have* authorized and/or participated in such efforts") (emphasis added). The Court should issue an order prohibiting plaintiff from taking discovery regarding those cases as well as the recent ASPCA v. Feld Entertainment, Inc., Civil Action No. 03-2006 – EGS-JMF litigation. To proceed otherwise will prolong this litigation needlessly, raise the time and expense necessary to

defend it, and apparently require several mini-trials on other subjects that do not involve Plaintiff. Plaintiff's Motion presents no basis for proceeding down such a path.

### III.  PETA, The Subpoenaed Party, No Longer Has Lawful Possession, Custody or Control of the Discovery Materials Sought by the Subpoenae.

The Motion should be denied as moot because plaintiff subpoenaed the wrong party. The protective orders entered in the Fairfax actions make clear that PETA no longer has lawful possession, custody or control of the requested deposition transcripts. Ex. 5, PETA v. Feld, At Law No. 220181 (Fairfax Cty. Va.), Protective Order (5/7/04) ¶ 9; PETA v. Feld, At Law No. 204452 (Fairfax Cty. Va.), Protective Order (2/23/04) ¶ 9; PETA v. Feld, At Law No. 204452 (Fairfax Cty. Va.), Protective Order (3/11/04) ¶ 9 ("No later than sixty (60) days following final conclusion of all litigation as to the causes of action in this case, including any appeals all Confidential Discovery Material and all copies thereof shall be returned to the producing person or entity."). Paragraph 9 permits only counsel, not the client, to retain copies. On January 19, 2010, Defense counsel wrote to PETA's counsel to advise him of this and send him Defendants' objections as well. See Ex. 13, Joiner Letter to PETA (1/19/10). As Ms. Joiner's letter made clear, if PETA actually has anything to produce to Plaintiff in response to the Subpoena then the Fairfax actions' protective orders have been violated. FEI will then have to go to that court to enforce the protective orders. Plaintiffs should have subpoenaed Mr. Hirschkop, PETA's counsel, instead of PETA itself. Indeed, Mr. Hirschkop, as PETA's counsel, *is* lawfully in possession of the PETA v. Feld deposition transcripts. See Ex. 5, PETA v. Feld, protective orders at ¶ 9 ("Notwithstanding the foregoing chief counsel … may retain a set of all produced material including Confidential Discovery Material and all work product derived from the same.").

None of this is news to PETA. PETA and FEI litigated this issue two years ago, but neither Plaintiff nor PETA advise the Court of this fact. The Subpoena in this case is very similar to a sham subpoena issued two years ago by the animal rights plaintiffs to PETA in the ASPCA v. Feld Entertainment, Inc., Civil Action No. 03-2006 – EGS-JMF litigation. Ex. 14, ASPCA subpoena to PETA. FEI also objected to that subpoena, extensive briefing followed, and ultimately, counsel for the ASPCA plaintiffs advised Judge Facciola that they were voluntarily withdrawing their motion to compel transcripts from PETA. Ex. 15, Minute Order find as moot [260] Motion to Compel (6/2/08).

The Court's analysis, therefore, should begin and end with paragraph 9 of the PETA v. Feld protective orders: PETA should not lawfully be in possession of *any* of the requested material and therefore PETA should have nothing to produce. If PETA followed the protective orders issued in the Fairfax actions, it is not necessary to determine whether the Subpoenae invade the various protective orders or other courts, or seek material unrelated to this case. Only if Plaintiff had subpoenaed Mr. Hirschkop – which she did not – would these issues be relevant. Both Plaintiff's' counsel and Mr. Hirschkop were advised of this, and the Subpoena should have been withdrawn. FEI's requests and objections were instead ignored as if never made, and this round of motions practice was unnecessarily initiated.

PETA's counsel, Mr. Hirschkop, disputes this in his January 20, 2010 letter to Plaintiff's counsel just as he did the last time he and FEI litigated this. Ex. 10, Hirschkop letter. He also accuses counsel and Fulbright & Jaworski of "threats and efforts to improperly obstruct response to the subpoena." Id. This is standard litigation rhetoric from Mr. Hirschkop. The purported "threats and obstruction" are the letter and objection that Ms. Joiner sent to Mr. Hirschkop on January 19, 2010. See Ex. 13, Joiner letter. Defendants disagree that there is anything

threatening or obstructionist about the letter or Objection. The Court should be aware that Fulbright & Jaworski, its attorneys – including Ms. Joiner, FEI and Mr. Feld have been litigating against PETA and Mr. Hirschkop for nearly ten years. See, e.g., PETA v. Feld, At Law No. 204452 (Fairfax Cnty.); PETA v. Feld, At Law No. 220181 (Fairfax Cnty,); ASPCA v. FEI, Civil Action No. 03-2006-EGS-JMF (D.D.C.); PETA v. FEI, Misc. Action 08-mc-69-EGS (D.D.C.); FEI v. PETA, Misc. Action 08-mc-94 (2008). We are nonplussed by his various insults, threats and *ad hominem* attacks. We believe all of it to be litigation tactics designed to intimidate opposing counsel and parties into submission – a proposition with which we are neither willing to agree nor comply. At the time of this filing, Defendants have received no responsive brief from PETA. It would not be surprising if PETA defaults on the Motion in an effort to assist Plaintiff procedurally. Whatever the motives of both PETA and Plaintiff, the outcome remains the same: PETA no longer has any right to the materials sought under the terms of the lawfully entered protective orders in the Fairfax cases. The Subpoena should be quashed accordingly.

## IV.   The Subpoenae Violate the Protective Orders of Other Courts

Moreover, even if PETA did lawfully have possession of the requested deposition transcripts – which it does not – production of those transcripts would violate the various protective orders governing the originating cases. See Ex. 8, Objection at No. 2; Ex. 9, Pottker Objection at No. 2. Plaintiff makes no effort to address this objection other than to say, "Defendants' letter does not indicate what interests were purportedly protected by these orders." (Motion at 3). This misses the point: All of the originating cases had protective orders that defined the procedure for how documents, including transcripts, could be designated as confidential. Once the confidentiality designation is made, the orders govern how the

confidential material is to be handled. There are thousands of pages of testimony that are called for by the overbroad Subpoena, and we have neither the time nor the page space to identify the specifics of the testimony. Moreover, doing so here would defeat the very purpose for which protective orders are entered – to preserve confidentiality.

For example, the protective orders in the PETA v. Feld cases make explicitly clear that ***all*** confidential discovery material, including the deposition transcripts presently at issue, may only be disclosed to certain authorized recipients. Ex. 5, PETA v. Feld, protective orders ¶ 4 (confidential discovery materials may be disclosed to (a) ***counsel*** for the parties; (b) ***court officials*** involved in the litigation; (c) ***agents of plaintiff*** to assist in reviewing the documents; and (d) ***persons permitted to have access pursuant to paragraph 5***) (emphases added). Plaintiff is not an "authorized" recipient as contemplated by paragraph 4. Paragraph 5 requires an order from the Virginia court for disclosure if the parties do not agree, which they do not. See id. ¶ 5 ("If the objection cannot be resolved on an informal basis, the party favoring disclosure must move the Court for permission to make such a disclosure. No disclosure shall occur unless the Court has ruled in favor of such disclosure or the parties have resolved the issue."). There is no such order. The language and construction of the protective orders is clear: the plaintiff and her counsel in this case are not "authorized recipients" of the transcripts. The same is true under the protective orders entered in PAWS and Sparshott. See Ex. 2, PAWS Order at ¶ 2; Ex. 3, Sparshott Order at ¶ 4.

Similarly, the Pottker case has concluded and now been sealed as a material term to the stipulated dismissal. Ex. 6, Dismissal Order. Any deposition that was taken in the Pottker case and subsequently produced by FEI to PETA in the Fairfax actions was sealed pursuant to the protective order entered by the Superior Court of the District of Columbia. See Ex. 5, Protective

Order (8/14/00). Those depositions were designated as Confidential Discovery Material pursuant to paragraph 2 of that order. Id. ¶ 2. The only persons permitted to access such material now are (a) the parties; (b) their counsel; (c) experts; and (d) those permitted by order of the Superior Court. See id. ¶¶ 5, 7. Neither plaintiff nor her counsel are permitted to access this material under the protective order. Id. Nor is there any order from Superior Court permitting plaintiff or her counsel access to these sealed transcripts. Cf. Ex. 7, Order Granting Motion to Produce Sealed Deposition Transcripts (5/11/04). The Court will recall that when Plaintiff issued a subpoena to Roger Simmons, plaintiff's counsel in Pottker, he moved to quash it. Ex. 16, Motion to Quash Simmons Subpoena (12/16/09) (hand filed with court). Plaintiff subsequently withdrew her subpoena. See Notice of Withdrawal of Subpoena (1/4/10) (Docket # 46).

There is no reason to ignore and violate the numerous protective orders in those cases that the witnesses relied upon to provide testimony related to those various cases. Dart Indus., 50 F.R.D. at 291-92 (prohibiting production of documents subject to other court's protective order). Plaintiff is essentially asking this Court to modify other courts' protective orders by ignoring them. Defendants do not concede that this Court has jurisdiction to do so. In any event, Plaintiff has not demonstrated the requisite good cause to support the request, including an inability to reasonably obtain the information by alternative means. Smithkline Beecham Corp. v. Synthon Pharmaceuticals Ltd., 210 F.R.D. 163, 166-68 (M.D.N.C. 2002) (courts are hesitant to modify protective orders for matters unrelated to litigation because it is unfair to change the rules in the middle of the game) ("modifying protective orders for other litigation involves re-litigation over issues that have nothing to do with the lawsuit in front of the court."); Massachusetts v. Mylan Lab's, Inc., 246 F.R.D. 87, 91 (D. Mass. 2007) (denying modification

where expansive sharing of confidential information would do nothing to advance the present litigation). To now ignore those other protective orders is, as FEI objected, harassing, overbroad and an invasion of privacy. The testimony taken in those cases is unrelated to the claims and defenses in this case.

V.      **The Material Sought Is Not Proper Impeachment Material**

Plaintiff claims that the testimony can be used for impeachment. (Motion at 4 (*citing* Newsome v. Penske Truck Leasing Corp., 437 F.Supp.2d 431, 436-37 (D. Md. 2006)). She provides, however, no explanation as to why any of the material would serve any impeachment purpose. Impeachment evidence is offered to discredit a witness by showing why the jury should not put faith in the testimony. Elion v. Jackson, 544 F.Supp.2d 1, 6 (D.D.C. 2008). Given that the testimony sought predates the events at issue in this case by years, and that the subject matter of the other lawsuits was different, there is no discernable basis for impeachment. As indicated above, only two of the individuals identified in the Subpoena, Kenneth Feld and Mr. Sowalsky, were present at the *shiva*. Two other witnesses are deceased (Bloom and Froemming), so impeachment does not apply. We also believe that certain of the deposition transcripts (for example, Smith and Kendall) were taken outside of the presence of any counsel for Defendants, thereby rendering them inadmissible under Rule 32. See Fed.R.Civ.P. 32(a)(1)(A) (requirements for using deposition include that party was able to attend or be represented at the deposition). "[T]he Court cannot allow the deposition to be admitted when there has been no opportunity to cross-examine the witness." Inside Scoop, Inc. v. Curry, 755 F.Supp. 426, 433 (D.D.C. 1989) (refusing to admit deposition taken outside the presence of defendant's counsel); accord Ex. 8, Objection at No. 5.

Other portions of the Motion indicate that the purported basis for the Subpoena is substantive, not impeachment, evidence, *i.e.,* relating to efforts to impede her professional and personal affairs. (Motion at 4). Substantive evidence, however, is offered to establish the truth of a matter to be determined by the jury. Elion, 544 F.Supp.2d at 6. In this case, there are no claims for interference with Karen's professional or personal affairs, so the subpoenaed materials are not discoverable as substantive evidence either. See Ex. 8, Objection at No. 9.

## VI. The Court Should, At a Minimum, Impose Parity to the Extent It Can

Alternatively, if the Court is willing to permit Plaintiff to re-litigate other cases, then Defendants request that it impose parity. For example, if the PETA protective orders are to be modified such that Plaintiff can select which testimony she wants to use originating from those cases, then Defendants should be permitted to use other sealed transcripts taken in those cases as well. The transcripts would be necessary for a full and fair defense to Defendants, and to explain why the jury properly returned its verdict for Mr. Feld. See Ex. 12, Jury Verdict and Final Judgment. Specifically, Defendants ask that the Court's modification order permit Defendants to use the following depositions taken of PETA personnel: Jeffrey Kerr, Ingrid Newkirk, Deb Leahy, Dan Matthews, Jeanne Rousch, Mary Beth Sweetland, and Tracy Reiman.

As for the Pottker case, Defendants object to the use of any materials from it as a due process violation. Defendants do not believe that the Court could impose parity even were it inclined to do so because of the final resolution of the case. The case has been dismissed, and Defendants do not believe that they can discuss the case, nor could they attempt to use any sealed portion of the case for anything – even explanation. See, e.g., Motion to Quash Simmons Subpoena at ¶¶ 4-5 (12/16/09) (final dismissal order incorporates the protective order, upon which all parties to Pottker case have relied).

## **CONCLUSION**

The Motion asks this Court to permit Plaintiff to re-litigate irrelevant, tangential litigation that Defendants have already concluded. Doing so will not lead to discovery of admissible evidence in this case: The claims in the other cases were different, the parties were different, and the testimony in them concluded years before the *shiva* that is the focal point of this case occurred. Moreover, many witnesses, including Defendants, relied upon those protective orders when providing their testimony. Plaintiff has not demonstrated any reason, much less good cause, as to why she should be permitted to take such overreaching discovery. For the reasons stated herein, Defendants ask the Court to recognize and uphold the valid protective orders of other courts, preclude Plaintiff from taking discovery related to the other cases, and quash the Subpoena. A proposed order is attached.

Dated: February 8, 2010

                                                Respectfully submitted,

/s/ Lisa Zeiler Joiner
Joseph T. Small, Jr. (D.C. Bar # 926519)
John M. Simpson (D.C. Bar # 256412)
Lisa Zeiler Joiner (D.C. Bar #465210)
Matthew H. Kirtland (D.C. Bar # 456006)
Caroline M. Mew (D.C. Bar # 467354)
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-0200

Counsel for Kenneth Feld and
Defendant Feld Entertainment, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion to Compel Production of Documents Subpoenaed from PETA was served this 8th day of February, 2010 on the following:

***VIA E-MAIL & REGULAR U.S. MAIL to:***

Philip J. Hirschkop
Hirschkop & Associates, PC
908 King Street, Suite 200
Alexandria, VA 22314-3013
Counsel for PETA

_____
Lisa Zeiler Joiner

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN FELD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KENNETH FELD, et al., )<br>)<br>Defendants. )<br>) | Case No. 1:08-cv-01557-ESH |

## ORDER

Upon consideration of Plaintiff's Motion to Compel Production of Documents Subpoenaed from PETA (Docket # 47) ("Motion"), and Defendants' Opposition thereto, and for good cause shown, it is this _____ day of February, 2010, hereby

ORDERED that the Motion is DENIED; and it is further

ORDERED that the Subpoena that is the subject of the Motion is QUASHED; and it is further

ORDERED that Plaintiff is PROHIBITED from taking discovery related to animal rights, the Pottker litigation, the Sparshott litigation, the PAWS litigation, the ASPCA litigation, or the various PETA litigations.

SO ORDERED.

_____