1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KAREN FELD,                      .    Case No. 1:08-CV-01557
                                 .    (ESH/DAR)
              Plaintiff,         .
                                 .    Washington, D.C.
      v.                         .    February 18, 2010
                                 .
KENNETH FELD,                    .
                                 .
              Defendant.         .
. . . . . . . . . . . . . . .

MOTION HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      Wilkie Farr & Gallagher
                        By:  STEVEN M. OSTER, ESQ.
                        1875 K Street, N.W.
                        Washington, DC 20006

For the Defendant:      Fulbright & Jaworski, LLP
                        By:  MATTHEW H. KIRTLAND, ESQ.
                          LISA Z. JOINER, ESQ.
                        801 Pennsylvania Avenue, N.W.
                        Suite 500
                        Washington, DC 20004

Transcribed by:         AMY SHANKLETON-NOVESS

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

_____

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

1          (Proceedings commenced at 10:20 a.m.)

2                THE CLERK:  Civil Case Number 08-1552.  This

3     is in the matter of <u>Karen Feld v. Kenneth Feld</u>.

4                Present for the Plaintiff in the courtroom is

5     Steven M. Oster, and for Kenneth Feld is Lisa Z. Joiner

6     and Matthew Kirtland.

7                This is scheduled for a motions hearing.

8                THE COURT:  Now, good morning to all of you.

9                The Court set this matter down on the

10    calendar for a hearing on the motions bearing Document

11    Number 47, Document Number 50, and Document Number 51.

12                The motion bearing Document Number 47 has

13    been fully briefed.

14                The motion bearing a single motion but

15    bearing two document numbers, 50 and 51, has not.  We

16    will address that in turn.

17                 The Court will note at this point that the

18    minute order of the Court directed that the Plaintiff

19    file a reply to the Defendant's opposition by 9:00 a.m.

20    this morning.  The ECF records do not reflect any entry

21    of the filing of a reply and it is my understanding

22    that the deputy clerk inquired earlier this morning,

23    just to be certain there was no clerk's office error in

24    the docketing, and that no reply was filed, although

25    the Court did order it.

1           We will begin, however -- Oh, in addition

2     with respect to our agenda this morning, even though it

3     is only 47, 50 and 51 that were the subject of the

4     Court's scheduling notice, the Court also intends to

5     address the last motion which was filed, and that is a

6     motion to amend the scheduling order.

7           The Court recognizes that the time for an

8     opposition or other response to that motion has not yet

9     passed, but I see no reason why, with the benefit of a

10    brief recess after we address 47, 50 and 51, that you

11    cannot prepare to respond.  The Court will hear your

12    response and expects to rule on that motion from the

13    bench.

14          It is likely -- Although I have not finalized

15    the determination, it is likely that if there is a very

16    brief extension of fact discovery that the Court

17    permits, or the Court's resolution of any of the

18    motions that are pending would warrant a further brief

19    period of fact discovery, that the Court would deny

20    without prejudice, the Defendant's motion for

21    sanctions, but we will discuss that at the time we

22    discuss the issue of amendment of the scheduling order.

23          Now, with respect to 47, I have reviewed the

24    Plaintiff's motion.  I have, of course, reviewed the

25    Defendant's response, Document Number 52.

1          I have reviewed the response of PETA,

2     Document Number 56, and I have reviewed the Plaintiff's

3     reply, Document Number 59.  Having done so, the Court

4     is prepared to share with you that the Court's

5     principal concern is the relevance of the documents

6     that have been requested.  Because that is the

7     principal concern, and the Court has no need at this

8     time, to consider a collateral issue which has been

9     raised; that is, the standing of the Defendant to be

10    heard with respect to the Rule 45 subpoena, I will not

11    hear from the Defendants, at least at this time.

12          I will hear from you, Mr. Oster.

13          MR. OSTER:  Thank you, Your Honor.

14          THE COURT:  Good morning.

15          MR. OSTER:  Good morning to you.  Good

16    morning, Counsel.

17          THE COURT:  Now again, this concerns only the

18    motion bearing Document Number 47, the motion to compel

19    production of documents in response to the third party

20    subpoena served upon PETA, --

21          MR. OSTER:  That is correct.

22          THE COURT:  -- with the understanding that

23    the Court's principal concern has to do with relevance.

24          MR. OSTER:  Your Honor, as we pointed out in

25    our papers, the hurdle that we need to get over in

1    terms of relevance, in the context of discovery, is

2    relatively low.  In fact, we cited a number of cases

3    which indicated that provided that the Court was unable

4    to determine that the documentation was not at all

5    relevant, that our motion should be granted and we be

6    given an opportunity to review the documents.

7            This case involves an intentional tort.  This

8    case also involves a claim for punitive damages.  We

9    have alleged and we intend to show, that the assault

10   which took place at the Shiva was only the latest in a

11   long line of nefarious conduct.  It was simply the

12   latest in a vendetta that Mr. Feld has been carrying on

13   against his sister for some time.

14           We believe, and based on our review of one

15   deposition, that of Alan Blune (phonetic), that the

16   testimony of these individuals, which include the

17   Defendant, which include individuals who were acting on

18   behalf of the Defendant, the individual Defendant and

19   Feld Entertainment, and review of that deposition, as

20   we indicated in our reply, showed that there were --

21   there was a discussion of Mr. Feld's longstanding lack

22   of a relationship with his sister.

23           There was a discussion of another incident

24   which occurred at another funeral, this one of their

25   father several years ago, and apparently there was a

1    book that was written by Kenneth Feld.  In that book he

2    described, in his view, what occurred during that

3    earlier incident, much as he has described what has

4    happened during this most current incident.

5             THE COURT:  Now, let me interrupt you, Mr.

6    Oster.

7             MR. OSTER:  Yes, ma'am.

8             THE COURT:  Do you acknowledge that in the

9    Complaint filed in this case, the allegations --

10   notwithstanding the breadth of the allegations that are

11   made, that the only claims which are pled concern the

12   events of 2007, following the death of the aunt of

13   Plaintiff and Defendant?

14            MR. OSTER:  I would agree with that, Your

15   Honor.

16            THE COURT:  Very well.

17            Then if that is the case, can we agree that

18   whatever testimony was taken in proceedings in Virginia

19   predated those events?

20            MR. OSTER:  Yes, Your Honor.

21            THE COURT:  Can we further agree then, that

22   if that is the case, there is no expectation that in

23   those transcripts there would be any testimony

24   regarding the 2007 events?

25            MR. OSTER:  That would be impossible, Your

1    Honor.

2         THE COURT:  To -- In that case, then, to what

3    would the testimony in the transcripts be relevant,

4    other than to demonstrate that there is animus between

5    Plaintiff and the Defendant?

6         MR. OSTER:  It would be relevant to animus,

7    the longstanding vendetta between the Defendant and the

8    Plaintiff, and it would be relevant to the Defendant's

9    credibility.  In the companion case -- well, not the

10   companion case, excuse me, in the other case between

11   the two parties that we call the "trust case," pending

12   in this Court, Kenneth Feld has sworn in a declaration,

13   that he bears no hostility towards his sister.  There

14   is testimony in the deposition that we located, which

15   is contrary to that.

16        Moreover, Charles Smith has submitted a

17   declaration in the trust case in which he also contests

18   the notion that Kenneth Feld bears no hostility towards

19   his sister.

20        Chuck Smith is one of the individuals whose

21   deposition we are asking for.  He is an individual who

22   has known the parties for dozens of years and who was a

23   relatively high-ranking official at Feld Entertainment.

24        THE COURT:  Doesn't the availability of

25   discovery directly from Mr. Smith in this case, further

1    obviate the need for testimony about a collateral
2    matter in some other case?
3              MR. OSTER:  It may or it may not, Your Honor.
4    Mr. Smith is not -- I understand Mr. Smith, who has
5    been named in the trust case, has not been served yet,
6    and there is some question as to whether or not he will
7    be available.  I mean, if he is available, then that --
8    the prior deposition testimony could be used to impeach
9    him, I would assume, but moreover, Your Honor, one of
10   the cases that we're looking at is a case known as the
11   Pottker case, and in the Pottker --
12             THE COURT:  Would you spell that for the
13   benefit of whoever may be required to transcribe this
14   recording, please?
15             MR. OSTER:  P-o-t-t-k-e-r, I believe.
16             In that case --
17             THE COURT:  Is that a matter pending in this
18   Court?
19             MR. OSTER:  That is another case which
20   recently concluded in Virginia, another case whose
21   records have been sealed.  However --
22             THE COURT:  Do you agree that -- Do you
23   acknowledge that this Court has no authority
24   whatsoever, to take any action regarding a sealed
25   matter in a state court in Virginia?

1          MR. OSTER:  No.  I do not, Your Honor.  I

2     don't believe that the state order can bind a federal

3     court.  I believe that if Your Honor issues an order

4     compelling the production of these transcripts, that

5     the respondents will be bound to produce them,

6     regardless of the state court order.

7          And stepping back, Your Honor, there has

8     never been any explanation as to why there is this

9     extraordinary shroud of secrecy over all of these

10    documents.

11         THE COURT:  But my -- As I indicated, my

12    concern at this time is only with respect to relevance.

13

14         Now, you have indicated that the documents

15    that are the subject of the subpoena are relevant to

16    three matters.  The first you identified is animus.

17         MR. OSTER:  Animus.

18         THE COURT:  The second, an ongoing vendetta;

19    and the third, credibility.

20         Let me ask you to elaborate upon the third,

21    please; that is, to articulate the nexus between the

22    documents that you seek through the third-party

23    subpoena to PETA, and the credibility of -- Well, I'll

24    have to ask you to fill in the blank because you refer

25    to both Mr. Feld and Mr. Smith, so I'm not certain

1    whose credibility you believe --

2              MR. OSTER:  I believe --

3              THE COURT:  -- relates to these documents in

4    Virginia.

5              MR. OSTER:  I believe that the documents will

6    bear on the credibility of Kenneth Feld.  The

7    relationship between Kenneth Feld and his sister was

8    brought up in the context of at least one of the

9    Virginia cases.  That's the only one that we have

10   information to any great extent on, and that's the

11   Pottker case.

12             In the one deposition that we've looked at,

13   there was direct testimony about Mr. Feld's

14   relationship with his sister, which is contrary to what

15   he indicated in the declaration that he filed in the

16   trust case.

17             In addition, the Complaint in the Pottker

18   case --

19             THE COURT:  Let me stop you one moment.

20             MR. OSTER:  Yes, ma'am.

21             THE COURT:  Even if that is so, and I have no

22   means to determine what was represented by Mr. Feld in

23   the declaration, nor do I believe that the Court needs

24   to know at this point, but assuming that what you have

25   just suggested is accurate, what difference does that

1    make for purposes of this litigation, in which damages

2    are sought for an alleged assault occurring on a

3    discrete day or interval?

4          MR. OSTER:  In the papers that Mr. Feld filed

5    just yesterday, he indicated, again, that he bears no

6    animosity towards his sister.

7          THE COURT:  My question is, what difference,

8    and I don't mean to sound unduly pejorative, why is

9    that relevant at all, to the allegations made by the

10   Plaintiff in this case?

11         MR. OSTER:  His animosity.  It goes directly

12   to the issue of intent, and it also bears on our claim

13   for punitive damages, since we will be arguing that the

14   assault was the product of his malicious attitude

15   towards his sister, and the vendetta that he's been

16   carrying on against her for many years.

17         THE COURT:  Very well.

18         You may summarize, Mr. Oster.

19         MR. OSTER:  Your Honor, given the fact that

20   we're in discovery, we haven't had an opportunity to

21   review all of these documents.  We carefully limited

22   our request to testimony of the Defendant and

23   individuals who we expect would have been acting on his

24   behalf.  We've looked at the allegations in at least

25   one of the related cases, and they do include

1    allegations of conduct against Mr. Feld's sister.  We

2    believe they bear directly on the relevance of intent,

3    and also on the -- I'm sorry, on the issue of intent

4    and on malice, which are both issues in our case.

5            THE COURT:  Very well.

6            Thank you, Mr. Oster.  You may be seated.

7            MR. OSTER:  Thank you, Your Honor.

8            THE COURT:  Now, as I indicated at the

9    outset, I have thoroughly reviewed the parties' written

10   submissions.  The Court's principal concern is

11   relevance.  The Court is satisfied that there is no

12   need to address the collateral issue of whether or not

13   Defendants have the opportunity to be heard, or

14   standing to be heard on the record with respect to this

15   issue.

16           The Court is also mindful that PETA

17   (phonetic), the entity from which the documents are

18   sought, takes no position.  However, the Court has made

19   an independent determination with respect to relevance,

20   and that determination is that there is no showing, or

21   that Plaintiff has not made a showing of relevance

22   sufficient to satisfy the applicable standard under

23   Rule 26 and Rule 45.

24           In so finding, the Court relies upon a

25   decision, a published decision of this Court, the

decision of Hesco, H-e-s-c-o, Bastion Limited v.
Greenberg Traurig, LLP, cited at 2009 Westlaw 5216932,
a December 23, 2009 opinion of this Court, which stands
for the proposition that a party seeking documents
pursuant to Rule 45 must nonetheless satisfy some
threshold showing of relevance, and the Court finds
that that simply has not been done here.

When asked to state the issues or the matters
to which the documents are relevant, Plaintiff's
counsel indicated that the documents are relevant to
animus; second, an ongoing -- an alleged ongoing
vendetta by Defendant Feld against the Plaintiff; and
third, the credibility of Defendant Feld -- Defendant
Kenneth Feld.  However, the Court finds that as to the
first two matters, there is simply no showing that
there is any issue regarding animus or vendetta that
requires discovery.  Certainly, none was articulated
in response to the Court's question.

With respect to credibility, there are
adequate avenues through discovery in this case,
through which credibility may be explored, indeed has
been explored, and the documents, by Plaintiff's own
admission, predate the events at issue in this case,
and for these reasons the Court finds that they are
simply not relevant.

1          Accordingly, the motion bearing Document

2    Number 47 will be denied and the ECF records will so

3    note.  The record will note that the motion is denied

4    for the reasons set forth on the record, and there will

5    be no further memorandum or further findings.

6          Now, we will turn our attention to 50 and 51,

7    the single document, but the document assigned two

8    motions numbers, 50 and 51: Plaintiff's motion to quash

9    subpoenas and for a protective order.

10          Mr. Oster, you are the movant, so I will hear

11    from you first.

12          MR. OSTER:  Thank you, Your Honor.

13          THE COURT:  And, of course, I will first ask

14    you to address your non-compliance with the Court's

15    February 16 minute order directing that you file a

16    reply to the Defendant's opposition.

17          MR. OSTER:  Thank you, Your Honor.

18          I apologize.  I had understood generally that

19    replies are permissive, but as a matter of fact I was

20    simply unable.  I did not have sufficient time to

21    meaningfully respond.  I had a family issue which came

22    up on Tuesday.  Yesterday we were in Nashville deposing

23    a deposition.

24          Unlike the Plaintiff in this case, I am not a

25    cadre of attorneys and I simply did not have sufficient

1    time to respond to both -- to file replies with respect

2    to both motions.  I apologize, Your Honor.

3            THE COURT:  You may proceed with your

4    argument on the motion.

5            MR. OSTER:  Thank you, Your Honor.  It's very

6    straightforward.

7            Surely there is some limit on the implied

8    waiver of the physician/patient privilege which is

9    statutory in the District, which is imposed on a

10   Plaintiff when she files a personal injury action.

11           When we were last in front of Your Honor, we

12   discussed the stipulated resolution of discovery

13   disputes, which Your Honor signed into an order, that

14   indicated that the --

15           THE COURT:  You're speaking of the November

16   16.

17           MR. OSTER:  I am, Your Honor.

18           THE COURT:  Bear with me just one moment.

19           MR. OSTER:  It's Document 36, Your Honor.

20           THE COURT:  Very well.

21           You may continue.

22           MR. OSTER:  Yes, ma'am.

23           That document indicated that Defendants will

24   draft a single consent form that Plaintiff can sign,

25   for use by Defendants in obtaining medical records via

1    subpoena.  At that time that we appeared in front of

2    Your Honor, of course, Defendants had not yet produced

3    that document.

4           Subsequently, they sent to me, a document

5    which was not a single consent form for the use of

6    obtaining medical records.  In fact, it went much

7    further than that.  Not only did it go well beyond the

8    bounds of the injuries complained of in this case, but

9    it also permitted ex parte oral communications between

10   any of Plaintiff's physicians, with no time or subject

11   limitation, and counsel for the Defendants.

12          THE COURT:  Now, it is my understanding that

13   we can fast forward from that period to the present,

14   because another authorization was proposed by --

15          MR. OSTER:  By me.

16          THE COURT:  By you.

17          MR. OSTER:  Yes, Your Honor.

18          I sent -- That was a very broad release.  It

19   is an exhibit to our motion.  I sent it to Defendant's

20   counsel.  I asked for their cooperation.  I invited

21   them to send me comments on it.  I indicated, in the

22   offer, that any comments they gave me would be without

23   any prejudice to their claim that Ms. Feld was required

24   to sign the original release.

25          They stoned me.  They said, "No.  She has to

1    sign the original release and we're not going to send

2    you any comments."

3            I had Ms. Feld sign the document and

4    forwarded it to them approximately seven to eight weeks

5    ago.

6            THE COURT:  And when you say, "The document,"

7    do you mean the release which you and the Plaintiff

8    prepared?  Perhaps I should say the release which you

9    prepared?

10           MR. OSTER:  That's correct, Your Honor.

11           THE COURT:  Very well.

12           So, it is that release that you forwarded to

13   the Defendants?

14           MR. OSTER:  That's correct, Your Honor.

15           THE COURT:  To the Defendant's counsel.

16           MR. OSTER:  Yes, Your Honor.

17           THE COURT:  Very well.

18           You may continue.

19           MR. OSTER:  That release --

20           THE COURT:  And that is the release that is

21   the exhibit to your motion?

22           MR. OSTER:  That's correct.  Well, both

23   releases are there, but it is the release that is

24   signed by Ms. Feld.

25           THE COURT:  I apologize.  I believe it is

Exhibit 3.  I simply want the record to be clear.

Exhibit 3 and -- Exhibit 3 to the motion bears the

signature, on the third page, of the Plaintiff.

MR. OSTER:  That is correct, Your Honor.

THE COURT:  Very well.

You may continue.

MR. OSTER:  Subsequently, we served discovery

responses on the Defendants, which included identifying

some 17 doctors.  We produced a number of medical

records.

I then received --

THE COURT:  So, am I correct in my

understanding, that the names of the physicians who --

the names of physicians which appear on the notice,

which is Exhibit 4 to your motion, are names that the

Plaintiff provided?

MR. OSTER:  Some are.  Others are not.

For instance --

THE COURT:  Very well.

Some of them are.  Let me ask you to

continue, please, with the chronology.

MR. OSTER:  Even more alarming than the fact

that those particular notices contained no limitation

with respect to the nature of the conditions for which

medical records were sought, there were physicians on

1  there who the Plaintiff did not even recognize.  One of

2  them, Dr. Steven Lipsius (phonetic); I happen to know

3  Dr. Steven Lipsius.  He called me and he said, "Why am

4  I getting this?  I have never seen Karen Feld, I don't

5  know Karen Feld."  I called up -- excuse me, I emailed,

6  four times, counsel for the defense, --

7          THE COURT:  Is that not a response, that he

8  has no records?

9          MR. OSTER:  Yes.  Yes.

10          THE COURT:  What, then, is the prejudice with

11  -- I don't want to have a collateral discussion about

12  one physician, but since that is the only example that

13  you have offered, of a physician whose name you do not

14  recognize, inasmuch as that person has responded and

15  said that he has no records, what action by the Court

16  is necessary with respect to him?

17          MR. OSTER:  There is no action necessary with

18  respect to him.  We haven't asked for any other, except

19  to the extent it underscored, for me, the fact that

20  there didn't seem to be any rhyme or reason to the set

21  of subpoenas that was being sent out.  I --

22          THE COURT:  Let me ask then, what is the

23  relief that you seek with respect to the subpoenas?

24          MR. OSTER:  The relief that I seek, Your

25  Honor, is --

1          THE COURT:  And I must ask the question that

2    way because I have not been able to determine, by

3    reading the motion, what it is that you wish the Court

4    to do?

5          MR. OSTER:  I would ask that the Court limit

6    the Plaintiffs in -- limit the Defendant's inquiry with

7    respect to Plaintiff's medical records, to the 14

8    conditions which I have identified at page 7 of the

9    brief, and which are contained in the release that we

10   sent to defense counsel.

11         And to be perfectly frank, Your Honor, the

12   issue with respect to Dr. Lipsius is not one that

13   necessarily bears any prejudice to the Plaintiff, but

14   Dr. Lipsius happens to be my doctor, and I was

15   extremely concerned.

16         THE COURT:  Well, I don't think we need to

17   discuss that, Mr. Oster, because no one has subpoenaed

18   your records, and there can be no confusion regarding

19   whether or not the physician is also your physician, or

20   is the physician of any of us who may be sitting here.

21         Let's go back to the request that you have of

22   the Court, to limit the inquiry to the 14 conditions

23   identified in the authorization.

24         MR. OSTER:  That's correct.

25         THE COURT:  Is there anything else you wish

1    the Court to do with respect to the Rule 45 subpoenas

2    to the physicians?

3             MR. OSTER:  Yes, Your Honor, we would like --

4    No, Your Honor.  That would be sufficient, from our

5    perspective.

6             THE COURT:  Now, to what extent, I'm going to

7    obviously hear from the Defendant's counsel next and

8    they will also answer this question, but since you have

9    now articulated the request for relief, there is a

10   follow up that I can ask you to address, while you're

11   still here at the podium.

12            MR. OSTER:  Yes, Your Honor.

13            THE COURT:  To what extent are the subpoenas

14   already limited to the 14 conditions, if it is the case

15   that the physicians whose names the Plaintiff provided,

16   are physicians who treated her for the 14 conditions?

17            MR. OSTER:  Not at all.  The subpoenas --

18            THE COURT:  Let me ask you to explain.  You

19   will, of course, follow up after I hear the Defendant's

20   answer to that question, but let me ask you to explain

21   why the answer is "No."

22            MR. OSTER:  There is no limitation in the

23   subpoenas that were sent to the 20 physicians,

24   whatsoever, other than the identity of the Plaintiff.

25   It's a blanket request for any medical record generated

1      anytime, with respect to Ms. Feld.  There's no

2      limitation, and it conceivably could include

3      pediatricians, obstetric records, it's --

4             THE COURT:  Are you suggesting that any of the

5      physicians who received a Rule 45 subpoena are

6      pediatricians?

7             MR. OSTER:  No, Your Honor, I'm not.

8             THE COURT:  Why then, did you use that as an

9      example?

10            MR. OSTER:  I used that as an example, Your

11     Honor, because -- to illustrate the fact that the

12     waiver of Ms. Feld is limited.  It's limited by the

13     scope of what's in the Complaint.  It is not an

14     unlimited waiver of her physician/patient privilege,

15     and there's nothing to prevent the Defendants from

16     sending out -- I mean, I believe they identified --

17     they said that they identified some 90 doctors when we

18     were here in November.  Those 90 doctors, and I don't

19     know who they are, and judging by the list that we

20     received so far, I suspect that the Plaintiff may not

21     remember who they are.  We don't know what they treated

22     her for, but if we know that we have a subpoena which

23     is reasonably limited to that which the Defendants need

24     to defend this case, then we don't have an issue.

25            That really is the nub of the problem.

1              THE COURT:  What is the basis of your

2      contention that to defend this case the Defendants are

3      limited to physicians and health care providers that

4      the Plaintiff selects?

5              MR. OSTER:  That is not my contention at all.

6      What I'm saying, Your --

7              THE COURT:  When I say "selects," I should

8      have said the Plaintiff has chosen to identify.

9              MR. OSTER:  That's not my contention at all,

10     Your Honor.  My contention is that whomever these

11     subpoenas are directed to, the subpoenas themselves

12     need to be coextensive with the scope of Ms. Feld's

13     waiver, which would be for the matters complained of in

14     this case and related matters.

15             THE COURT:  Very well.

16             Thank you, Mr. Oster.

17             MR. OSTER:  Thank you.

18             THE COURT:  Ms. Joiner or Mr. -- Ms. Joiner.

19             Very well.

20             MS. JOINER:  Thank you, Your Honor.

21             THE COURT:  Good morning.

22             MS. JOINER:  Good morning.

23             May it please the Court, as we tried to

24     explain in our papers, there are several layers of

25     waiver that have occurred with regard to this

1    particular Plaintiff, and the reason why we're

2    frustrated is the documents that were sought by the

3    recent round of subpoenas that went out, should have

4    been produced and taken care of on December 18th, and

5    with Plaintiff's failure to produce her medical

6    records, we're now having to resort back to subpoenas,

7    and I would like the Court just to be clear, to remind

8    it, because there's been a rather long history of us

9    trying to get the medical records from Plaintiff in

10   this case, but in the Complaint itself, there are four

11   different counts: Assault, battery, intentional

12   infliction of emotional distress, and false

13   imprisonment.

14          There are pre-existing conditions that are

15   alleged throughout the Complaint that include what

16   Plaintiff refers to as, "Seizure-like episodes, speech

17   disinhibition, confusion, disorientation."

18          The injuries that she has identified include:

19   Physical, emotional and psychological harm; permanent

20   and serious physical and psychological disability;

21   injuries to neck, back, ribs, elbows, knees, vision;

22   and a shifting of a brain tumor subsequent to the

23   events that are at issue here."

24          So, number one, our first position is, is that

25   there is an implied waiver by filing such claims in

putting both her emotional and her physical conditions

at issue.  And this is not a case where we're talking

about that some of the plaintiffs -- some of the cases

that Plaintiff's counsel have cited, where somebody has

filed an employment discrimination claim and they have

a headache.  This is a completely different creature,

in terms of the nature of this case.  This is all about

alleged personal assaults and injuries, and the

injuries are far flung, and you need only to look at

the amount of damages claimed, which is ten million in

actual, and 100 million in punitives.  So, the

allegations themselves are far flung.

          Now, there is also other litigation history

that this Plaintiff has, where she's claimed the same

injuries, and we touched on this a little bit in

December.  There is a Fulton Liss case that was filed

in 1994, and those allegations in that case mirror

what's happening here: Head, neck -- excuse me, head,

neck, hip, hearing, vision and neurological problems.

          THE COURT:  Now, let me ask you to address the

issue of the identity of the physicians who were served

with Rule 45 subpoenas.  I believe you are prepared to

acknowledge that some of the names were supplied to you

by the Plaintiff, but not all of the names; is that

correct?

1          MS. JOINER:  That's correct, Your Honor.

2          THE COURT:  Where did the remaining names come

3     from?

4          MS. JOINER:  The remaining names came from our

5     review of the _Fulton Liss_ case, and the physicians that

6     Plaintiff had identified in that litigation at that

7     time, and so that was because we had to go out and do

8     our homework because we weren't getting the

9     identification of medical providers.

10         As to Dr. Lipsius, I don't know if Plaintiff

11    has forgotten that she saw him, that she never saw him,

12    but that came out of the _Fulton Liss_ litigation

13    pleadings that we have gone and reviewed, because we

14    are trying to get to the bottom of this because these

15    are pre-existing, long-standing injuries.

16         THE COURT:  Now, what is your proffer with

17    respect to the relevance of the medical records in the

18    prior case, or treatment of the Plaintiff with respect

19    to matters alleged in the prior case and this one?

20         Are you suggesting that the records relate to

21    pre-existing conditions, since they certainly would not

22    relate to injuries as a result of the events alleged in

23    this case?

24         MS. JOINER:  Yes, Your Honor, that is correct.

25    Because in order to be able to assess --

1          THE COURT:  Now, what is your proffer

2     regarding how they relate to -- when I say, "They," I

3     mean the records of physicians other than those whose

4     names were given to you by the Plaintiff in this case?

5          MS. JOINER:  Because the identities of the

6     persons that we pulled from the <u>Fulton Liss</u> litigation,

7     we believe, provided treatment to Plaintiff for

8     psychological, physical, neck, head, hip, et cetera,

9     injuries that she claimed in that case that are the

10    same type of injuries that are being claimed in this

11    case, and in the instance where you have pre-existing

12    medical conditions, what you must have in order to get

13    to the bottom of causation is you must be able to

14    figure out what, if anything, changed in Plaintiff's

15    pre-existing medical condition as a result of the

16    incidents that occurred in September 2007, and without

17    being able to look at the pre-existing conditions and

18    get that discovery, that causation analysis can't

19    occur.

20         THE COURT:  Now, what have you done to ensure

21    that no subpoenas were served on physicians who may

22    have treated the Plaintiff, to use Mr. Oster's example,

23    for something entirely unrelated to either a pre-

24    existing condition or the injuries alleged?

25         MS. JOINER:  There's two components to address

1    Your Honor's question.  I'm going to set aside the

2    waiver for the moment, but in order to ensure why it is

3    that we're seeking these particular materials from

4    these people, that is again based on either the names

5    that we were able to pull from what Plaintiff provided,

6    from our position, belatedly.

7         There were also a few names that we pulled

8    from the limited records that Mr. McDaniel produced in

9    August to us, and then, as I said, the rest came out of

10   these -- the litigation filings in the other case,

11   where the same nature and claims were alleged for

12   treating physicians.

13        So, it's not like we're opening up the phone

14   book and saying, "Oh, here's Dr. So-and-So, let me send

15   him a subpoena and see if he has anything on Karen

16   Feld."

17        And I also wanted to point out to Your Honor

18   that there is a second pending case in which Mr. Oster

19   represents the Plaintiff, that is ongoing right now in

20   superior court, where Plaintiff claims ongoing physical

21   and psychological injury, including PTSD, and she

22   claims that the nurse who treated Plaintiff subsequent

23   to the event at issue in this case, caused all of these

24   injuries to her.

25        So again, it's another causation issue.  Where

1    are these records?  Plaintiff waived all of this.

2    Setting aside the whole waiver, where are these

3    records, and why are they not being produced and

4    disclosed?  December 18th was the date for that.  We

5    issued written discovery requests that were due in

6    August, and those requests, Plaintiff didn't raise the

7    objections that she's now trying to make now.

8            So in addition to the implied waiver that

9    comes from the claims in the Complaint, she didn't make

10   her objections in response to those original requests,

11   and thereby waived them again a second time.

12           THE COURT:  Have all of the subpoenas been

13   served?  When I say, "All of the subpoenas," I mean all

14   of the Rule 45 subpoenas to physicians or other health-

15   care providers?

16           MS. JOINER:  I believe -- We tried to pull

17   this together last night.  I believe that there may be

18   four that are not served yet, and then there were also

19   an additional two that we had sent out for a March 1

20   return date, that we noted in our brief we'd like Your

21   Honor to consider with this issue, as well.

22           I believe both of those providers are in

23   Maine, and again, the nature of the treatment, we had

24   in a footnote in our brief, but we thought, again, goes

25   to the type of the injuries alleged in this case by

1    Plaintiff.

2              THE COURT:  Very well.

3         Thank you, Ms. Joiner.

4         Mr. Oster, we'll hear your reply.

5         MR. OSTER:  Thank you, Your Honor.

6              THE COURT:  Your reply on the record, the

7    Court noting that no written reply was filed, but if

8    you wish a brief reply on the record, I will hear you

9    now.

10             MR. OSTER:  I would ask that Your Honor turn

11   to page 7 of our motion and -- because I'm going to

12   refer to it just for a second.

13             The opposition which I just heard, completely

14   misses the point.  The issue is not, "Should they be

15   entitled to subpoena Plaintiff's medical records?"  In

16   fact, the consent form that Your Honor ordered,

17   contemplated the use of subpoena so that notion that

18   they've had to, quote, "Resort to subpoena," is rather

19   disingenuous.  That's what was contemplated from the

20   beginning.

21             The point that I'm making is, irrespective of

22   how they obtain the documents, there are only certain

23   documents that are relevant.  Ms. Joiner brought up

24   post traumatic stress disorder.  That's specifically

25   limited -- listed in the release that Ms. Feld signed.

1   And I think because we haven't heard a single word to

2   suggest that this particular list of injuries is not

3   broad enough to include everything they need, both in

4   terms of the current injury and any pre-existing issues

5   which might mitigate damages, it's reasonable to assume

6   that any physician receiving this subpoena, limited

7   appropriately to that which Ms. Feld waived, will

8   provide to them the documents that they need.

9          My concern is, we have no way of preventing

10  any physician who receives one of these subpoenas and

11  who treated Ms. Feld for ten different things over the

12  course of 20 years, two or three of which might be

13  relevant to this case, they're going to get all 20, and

14  that's simply not appropriate and it's not necessary.

15         So again, we would ask that Your Honor limit

16  the subpoenas to the matters that are complained of.

17         THE COURT:  Is there a physician -- I'm

18  again --

19         MR. OSTER:  Yes, Your Honor.

20         THE COURT:  -- seeking input from you, as

21  counsel who has filed this motion with respect to an

22  instance in which that has actually occurred.  You have

23  referred to concerns regarding what might occur, such

24  as records might be sought from Ms. Feld's

25  pediatrician, but you quickly acknowledge that that has

1    not occurred.  What instance is there of a subpoena

2    which could lead to the production of medical records

3    regarding treatment which occurred, in your words,

4    years and years ago, for something that had absolutely

5    no relevance to this case.

6          MR. OSTER:  My understanding is that there are

7    respondents who have treated Ms. Feld for a myriad of

8    things, but Your Honor --

9          THE COURT:  That was not my question, Mr.

10   Oster.  Of the subpoenas that have been served, and you

11   are aware of which ones they are because the

12   Defendant's counsel told you, which ones implicate

13   records relating to treatment 20 years or more ago, for

14   something that, in your view, is wholly unrelated to

15   the current case?

16         MR. OSTER:  Your Honor, it's our position that

17   all of them implicate that concern because there is no

18   limitation in them.  I can't tell you a specific

19   physician at this point, but it's almost as if we are

20   approaching this from the perspective of not being

21   concerned about sacrificing a legitimate, recognized,

22   statutory privilege on the theory that, "Well, they'll

23   send it to the correct people, and the doctors will

24   only send back that which is relevant."  There's really

25   no safeguard built in here, and I haven't heard a

1    single syllable from the Defendants as to why they

2    object to limiting the subpoenas appropriately, to the

3    injuries that are complained of in this case, and

4    related injuries.  There is nothing in Ms. Feld's

5    signed release which prevents them from getting at

6    every, single, particular injury which Ms. Joiner just

7    mentioned, and yet we're being asked to assume the risk

8    that there may be private matters turned over to the

9    Defendants, and there's really no justification for

10   that, Your Honor.

11           I mean, on the one --

12           THE COURT:  You may continue.

13           MR. OSTER:  -- on the one hand, Your Honor

14   held me to a very strict standard of relevance with

15   respect to the transcripts that we were just talking

16   about, and I would ask that Your Honor hold the

17   Defendants to the same strict standard of relevance,

18   and the only relevant physical and emotional matters in

19   this case are those which are on page 7 of the brief.

20           THE COURT:  Very well.

21           Thank you, Mr. Oster.

22           MR. OSTER:  Thank you, Your Honor.

23           MS. JOINER:  Your Honor.

24           THE COURT:  Ms. Joiner?

25           MS. JOINER:  May I respond one more time?

1          THE COURT:  Yes, although I will give Mr.

2    Oster a brief -- an opportunity to briefly respond to

3    whatever your additional argument is.

4          MS. JOINER:  Thank you.  And I recognize it's

5    his motion, he gets final say.

6          I do want to address the issue of consent

7    forms because the way that this issue arose and came

8    about, and finally wound up in the stipulated order in

9    November, was that Ms. Mew had drafted, I believe it

10   was over 40, and she had written individual consents

11   for various providers, and I believe there was some

12   back and forth between her and Mr. McDaniel about that,

13   and so the agreement was, "Okay, we're not going to

14   have a specific consent for every single person, we

15   will collapse it into one."  So the issue there was to

16   make a single uniform consent to make it easier, not to

17   alter or somehow revise or change the substance of the

18   consent form.

19         So that was something that I wanted to make

20   clear to Your Honor, because counsel had raised the

21   issue.

22         The rest of the materials, there are other

23   issues that are in our papers.  I do want Your Honor to

24   also be aware that we had our first round of subpoenas

25   that went out in October, and I --

1          THE COURT:  The Court is aware.

2          MS. JOINER:  I believe there were twelve of

3    those, and they were identical to the ones that were

4    just issued recently, but obviously to different

5    providers.

6          So, we are happy to submit to the Court on the

7    other arguments and issues that are in our papers, and

8    I thank you for letting me address that one final

9    thing.

10         THE COURT:  Very well.  Thank you, Ms. Joiner.

11         Mr. Oster?

12         MR. OSTER:  Your Honor, I'll stand.

13         THE COURT:  Very well.  Thank you.

14         The Court, having carefully reviewed the

15   Plaintiff's motion to quash subpoenas and for a

16   protective order, and the Defendant's written

17   opposition thereto, as well as the arguments of counsel

18   this morning, will deny the Plaintiff's motion to quash

19   subpoenas and the motion for a protective order.

20         Simply put, the Court finds that the Plaintiff

21   has demonstrated no basis warranting the entry of such

22   an order.  The Court noted, during the course of the

23   questions directed to Mr. Oster, that the motion --

24   there is no indication in the motion regarding the

25   precise relief that the Plaintiff even requested,

1   leaving the Court at something of a loss to determine

2   what relief the Plaintiff wanted with respect to the

3   subpoenas.

4          That puzzlement, of course, arose, in part,

5   against the backdrop of the prior proceedings with

6   respect to the subpoenas of medical records which the

7   Court first became involved back in the fall of 2009,

8   so we have long since passed the point that there is a

9   basis for any discussion regarding the extent of the

10  waivers and the medical conditions which have been put

11  into issue.  That has already been addressed.

12         The issue of authorizations has also been

13  addressed.

14         The subpoenas have been served.  The Court --

15  Except that the modest number that have not yet been

16  served, none of the parties upon whom the subpoenas

17  were served, have sought to intervene or suggested that

18  there is some question about what is requested, or

19  objected regarding the propriety of producing it, or

20  raised any issue regarding the extent of the waivers or

21  HIPAA violations, or anything else.

22         So the Court is simply left, at this point, to

23  assess the request which Mr. Oster stated on the

24  record, and that is that the Plaintiff seeks to: "Limit

25  the inquiry to the 14 conditions identified in the

1    authorization."

2          Without making any finding regarding whether

3    that is an appropriate articulation of the applicable

4    standards, the Court is satisfied that the subpoenas

5    have been limited in that manner because the subpoenas

6    were served upon the physicians identified by the

7    Plaintiff, either in this litigation or in prior

8    litigation in which the same conditions and injuries

9    were claimed.

10          For that reason there is no fear, and indeed

11   Plaintiff's counsel readily withdrew the observation,

12   or the concern that there might be a fear that a

13   subpoena could be served upon Ms. Feld's pediatrician.

14   This has not occurred, the Court has no reason to

15   believe it will occur inasmuch as the physicians upon

16   whom the subpoenas were served are the ones identified

17   by the Plaintiff, either here -- when I say "Here," I

18   mean in response to discovery requests in the case

19   pending in this court, or in response to discovery

20   requests in other cases, where the same Plaintiff

21   complained regarding the same -- complained of the same

22   injuries, or put the same conditions in issue.

23          For these reasons the motion to quash and for

24   protective order is denied.

25          There will be an ECF entry which so states,

1   and there will be no further findings, the Court having

2   already set forth its findings in great detail.

3          Now, at this time we will take a brief recess

4   so that you can confer regarding the motion to amend

5   the scheduling order, and then I will hear your

6   arguments.

7          By suggesting that I want you to confer, I do

8   not mean that I have determined that the motion will be

9   granted.  Indeed, it may not be, but I still believe I

10  must hear your -- I should hear you on the record

11  before making any determination.

12         Bear with me just one moment, please.

13     (Pause.)

14         THE COURT:  Counsel, the Court -- because the

15  Court has another matter in the next few minutes, and

16  in order to facilitate your discussion, I'm going to

17  ask the three of you to please accompany my law clerk

18  to the jury deliberation room, where you may have this

19  discussion regarding the last motion which was filed.

20         In addition, I will ask that you discuss,

21  while you are there, whether this is a point that you

22  would be aided by the assistance of someone from the

23  Court's mediation program.  If so, I'll ask you to

24  please inform Ms. Johnson and she will arrange for

25  someone to come quickly to speak with you in the back.

1          Very well, thank you.  We're going off the

2     record at this time and I'll just ask that you please

3     accompany Ms. Johnson.

4          MR. OSTER:  Thank you, Your Honor.

5          MR. KIRTLAND:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          THE CLERK:  The Court stands in brief recess.

8       (Recess at 11:14 a.m., until 11:41 a.m.)

9          THE CLERK:  We are back on the civil matter,

10    08-1557, Karen Feld vs. Kenneth Feld.  All parties are

11    present.

12         THE COURT:  Now Counsel, thank you for taking

13    an opportunity to confer regarding the last of the

14    motions that was filed.  While you were doing that, the

15    Court determined that that motion will be addressed by

16    Judge Huvelle when you appear before her for the status

17    conference and scheduling conference there, which will

18    follow this one.

19         I indicated before your recess that it was my

20    intention to deny without prejudice, the motion for

21    sanctions.  The motion is not ripe.  I have not heard

22    your argument on it, but have determined that that is

23    the appropriate course.

24         The Court does not know, at this point, what

25    additional time, if any, you will have to complete

1    discovery.  The issue -- Any issue that may arise

2    regarding the need for sanctions can, of course, be

3    better addressed after the Court has -- after the Court

4    and counsel have assessed the extent of the parties'

5    compliance with the orders regarding further discovery,

6    and there will then be a complete record, so no one is

7    prejudiced by a determination this morning, to deny

8    this motion without prejudice, and that is the order of

9    the Court; that is, 54 is denied without prejudice.

10          With that, we will recess.  You are excused to

11   go directly to Judge Huvelle's courtroom for your

12   further proceedings.

13          MR. OSTER:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15          Indeed, you may meet Judge Huvelle's clerk in

16   the hall outside the door.

17          MR. KIRTLAND:  Thank you, Your Honor.

18          MR. OSTER:  Thank you, Your Honor.

19      (Proceedings concluded at 11:43 a.m.)

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          March 4, 2010

STEPHEN C. BOWLES