# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KAREN FELD,

       Plaintiff,

  v.

       Civil Action No. 08-1557 (ESH) (AK)

KENNETH FELD, *et al.*,

       Defendant.

## MEMORANDUM ORDER

Pending before this Court is Plaintiff's Emergency Motion for Protective Order Regarding Inadvertently Disclosed Email Chain [129] ("Plaintiff's Motion"), Defendants' Opposition [133], and Plaintiff's Reply [134]. All documents pertaining to Plaintiff's Motion have been sealed pending final resolution. (*See* Min. Order Feb. 16, 2011 (granting Defendants' motion to seal their opposition); Min. Order Feb. 18, 2011 (sealing all remaining documents pertaining to Plaintiff's Motion *sua sponte*)) A sealed motions hearing was held on February 24, 2011. The Court reviews Plaintiff's Motion within the scope of this Court's limited authority as granted by the trial court for resolution of discovery matters. Upon consideration of the pleadings, relevant case law, oral argument, and for the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I.    Background

The pending motion concerns an email Plaintiff inadvertently sent to opposing counsel containing unsavory language and damaging facts about her participation in psychological tests administered by her expert witness. The relevant events began on February 8, 2011, at 9:15 PM,

when Plaintiff's lead counsel sent an email to Defendants' lead counsel and two other members of Plaintiffs' litigation team and attached, among other documents, a PDF of Plaintiff's first expert report prepared by Dr. Daniel Brown ("Brown Report").  (Defs.' Opp'n  Ex. 1)  Plaintiff was blind carbon copied on the email.  (Pl.'s Reply 11)  According to Plaintiff's lead counsel, as a general practice Ms. Feld is not copied (a/k/a "cc:ed") or blind carbon copied (a/k/a "bcc:ed") on emails to opposing counsel.  (Pl.'s Mot. 2)  Instead, Plaintiff's attorneys "forward" any email communications with opposing counsel to Plaintiff such that if Plaintiff were to accidentally "reply all" to the email, she would not inadvertently send a communication to opposing counsel. (*Id.*)  Plaintiff's counsel stated at the hearing that it was only after the presently discussed disclosure that he became aware that an individual who is "bcc:ed" on an email is able to "reply all" to the other recipients.

On February 8, 2011, the usual precaution was not taken and at 10:22 PM, after Plaintiff reviewed the Brown Report and drafted her comments, she "replied all" to the sender and all recipients of the email, including Defendants' lead counsel.  (Pl.'s Mot. 2)  In her email, Plaintiff referred to the "many inaccuracies" that exist in the Brown Report due to her difficulty "reading fine print and checking corresponding boxes" of a questionnaire given to her by Dr. Brown. (Defs.' Opp'n Ex. 2)  Plaintiff further wrote that she "went down and randomly checked stuff" during the written evaluations she supplied to her expert.  (*Id.*)  Plaintiff describes the report as "quite fraudulent in many respects" and explains that her "continued depo[sition] will be 180 degrees away from this report in most instances."  (*Id.*)  Plaintiff's lead counsel duplicated her error at 10:58 PM, again "replying all" and drafting a short response that was sent to all, including opposing counsel.

Early the following morning, Plaintiff's lead counsel notified Defendants' lead counsel of the error and requested that Defendants' counsel delete the two emails.  (Pl.'s Mot. 2; Defs.' Opp'n Ex. 4)  A follow-up email was sent several hours later.  (Pl.'s Mot. 2-3; Defs.' Opp'n Ex. 5)  Defendants' lead counsel responded that he read both emails before realizing they were not intended for him.  (Defs.' Opp'n Ex. 6)  After further exchange, Plaintiff filed the pending motion for a protective order to require Defendants' counsel to delete the email.  Plaintiff does not seek to amend or retract the Brown Report.  (Pl.'s Reply 7)

The Court received for *in camera* review, but did not consider, the Declaration of Dr. Steven Frankel, a psychologist who is also an attorney retained by Plaintiff, as the declaration gives his opinion regarding Plaintiff's state of mind when she responded to her counsel's email. Dr. Frankel has entered his appearance as an attorney and not as an expert psychologist.

## II.    Analysis

Plaintiff moves for a protective order to first require Defendants to delete the above-referenced emails that were sent to opposing counsel in error, and second, to prohibit Defendants from using the two emails for any purpose in the instant litigation.  (Pl.'s Mot. 6)  Plaintiff argues that the contents of the two emails are clearly protected by attorney-client privilege and that Plaintiff did not waive her privilege by exposing her email to opposing counsel because she has satisfied all three elements of Federal Rule of Evidence ("FRE") 502(b) on inadvertent disclosures.  (*Id.* at 4-5)

Defendant objects to the motion for a protective order, arguing first that the email chain is not privileged because it reveals a fraud on the Court, and second, that even if the email chain is privileged, the attorney-client privilege was waived when Plaintiff and her counsel voluntarily

disclosed them to opposing counsel through their own gross negligence.  (Defs.' Opp'n 1-2)

Defendant further argues that FRE 502(b) does not apply because the email was produced outside

the context of document exchange in the discovery process.  (*Id.* at 10)

A.      Attorney-Client Privilege

In making its determination, the Court first assesses whether the two emails contain

attorney-client privileged statements.  The protection of attorney-client privilege applies: "(1)

where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as

such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client,

(6) are at his instance permanently protected (7) from disclosure by himself or by the legal

adviser, (8) except the protection be waived."  *Adams v. Franklin*, 924 A.2d 993, 998-99 (D.C.

2007) (citation omitted).[1]  The attorney-client privilege does not apply to the "disclosure of the

underlying facts by those who communicated with the attorneys."  *Upjohn Co. v. United States*,

449 U.S. 383 (1981); *see Amobi v. D.C. Dep't. of Corr.*, 262 F.R.D. 45, 50 (D.D.C. 2009) ("No

witness can claim immunity as to facts.").

Upon reviewing Plaintiff's email and her attorney's reply, Plaintiff's affidavit (Pl.'s Mot.

Ex. 2), and the arguments of counsel, the Court concludes that the emails contain attorney-client

privileged statements.  In her email, Plaintiff provided information that she intended to be

confidential including her personal impressions of her experts, her opinion of the accuracy of the

---

[1] The Court turns to law of the District of Columbia for the attorney-client privilege standard in accordance with Federal Rule of Evidence 501.  *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").  However, the standards in the District of Columbia and the D.C. Circuit on many privilege issues are essentially the same.  *See e.g.*, *In re Public Defender Serv.*, 831 A.2d 890, 906 (D.C. 2003) (applying federal law for the crime-fraud exception to attorney-client privilege).

Brown Report, and her comments on how the Brown Report might contradict her continued deposition testimony.  These communications fall within the realm of a client's confidential disclosure to her counsel for the purpose of obtaining legal advice in the above referenced matter. Regarding the statements in Plaintiff's email about how she answered the written questions provided by Dr. Brown, the Court has concern about whether these are non-privileged statements of fact rather than Plaintiff seeking legal advice.

B.      Crime-Fraud Exception

Second, the Court assesses whether the crime-fraud exception applies.  For public policy reasons, the attorney-client privilege does not protect communications used to perpetuate an ongoing or future contemplated crime or fraud on the court.  *See In re Public Defender Service*, 831 A.2d 890, 906 (D.C. 2003).  In order to meet the crime-fraud exception, the communication itself must be in furtherance of a crime or a fraud and "not merely . . . [have] the potential of being relevant evidence of criminal or fraudulent activity."  *Id.* at 906.  In order to pierce the privilege, there must be a *prima facie* showing that a crime or fraud has occurred.  *See In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007).  The essential elements of fraud are: (1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed.  *Higgs v. Higgs*, 472 A.2d 875, 876 (D.C. Cir. 1984).  Thus, the party alleging fraud must "offer[] evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud."  *In re Grand Jury*, 475 F.3d at 1305.

For the crime-fraud exception to apply, the communication must be in furtherance of an unlawful purpose.  The reply email sent by Plaintiff did not disclose any information that

suggests that she intended to be unlawful or to mislead the Defendants.  Thus, the Court finds

there is insufficient evidence to prove that Plaintiff sought her attorney's advice in order to

perpetuate an ongoing or future contemplated crime or fraud on the court.  Upon reviewing the

Brown Report, Plaintiff identified the inaccuracies in the report for her attorneys and explained

that her "continued depo[sition] will be 180 degrees away from this report in most instances."  If

anything, these statements are indications of Plaintiff's commitment to testify truthfully.  While

Plaintiff uses the word "fraudulent" to describe the report, she does so as a lay-person, without

understanding the legal elements required to make a *prima facie* case of fraud.  Submitting an

expert report with what Plaintiff believes are inaccuracies based on the impact of her medical

limitations on the expert's assessment may be unwise, but it does not prove Plaintiff's intent to

deceive this Court.  Thus, Defendants have not proved a *prima facie* case of fraud.

C.    Waiver of Attorney-Client Privilege: FRE 502(b)

Finally, the Court assesses whether Plaintiff waived her privilege when she "replied all"

and sent the email to opposing counsel.  At common law, a party waives "[t]he privilege which

attaches to a confidential communication between attorney and client . . . when the substance of

that communication is related to a nonprivileged party." *Adams v. Franklin*, 924 A.2d 993, 999

(D.C. 2007) (citing *Bundy v. United States*, 422 A.2d 767, 767 n.4 (D.C. 1980)).

The enactment of FRE 502 replaced the common law in this circuit in 2008.  FRE 502(b)

states that a disclosure does not operate as a waiver of attorney-client privilege if: "1) the

disclosure is inadvertent; 2) the holder of the privilege or protection took reasonable steps to

prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error ... ."  Fed.

R. Evid. 502(b).  The Advisory Committee Note gives guidance on the topic of reasonableness

by providing non-dispositive factors a court may consider, including the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of the disclosure, the number of documents to be reviewed, the time constraints for production, and the overriding issues of fairness.  Fed. R. Evid. 502 Ad. Com. Note at (b); *see also Amobi v. District of Columbia Dep't of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009).

The Court applies FRE 502(b) over Defendant's objection as the Court does not agree with Defendant that FRE 502(b) applies so narrowly as to exclude an inadvertently sent email chain regarding a party's expert report.[2]  There is no dispute that the first and third prongs of FRE 502(b) have been satisfied.  Plaintiff declares that she drafted the email with the intention of sending it only to her counsel.  (Pl.'s Mot. Ex. 1, at 1)  Additionally, Plaintiff's lead counsel took reasonable steps to rectify the error, including emailing Defendants' lead counsel immediately (Defs.' Opp'n Ex. 4-5) and filing this Motion when counsel reached impasse.

However, the Court is not satisfied that reasonable precautions were taken to guard the privileged emails.  While Plaintiff's counsel describes reasonable precautions taken to prevent inadvertent disclosure in other instances, such as separately forwarding all email communications to Plaintiff, these precautions were not followed on February 8, 2011.  A party cannot prevent the waiver of attorney-client privilege under 502(b) for reasonable precautions that were not undertaken.  Plaintiff's lead counsel's prior incorrect belief that an individual who is "bcc:ed" could not "reply all" to the other recipients does not persuade the Court because counsel himself

---

[2] *Cf. Multiquip, Inc. v. Water Management Systems, LLC*, 2009 WL 4261214, No. CV 08-403-S-EJL-REB, at *1, *4-5 (D. Idaho 2009).

admits that "bcc:ing" his client was a defection from the reasonable precautions he normally utilized.

Additionally, overriding issues of fairness weigh in favor of the Defendants in this instance.  Now that the facts have been disclosed to opposing counsel, Plaintiff cannot insulate herself from her conduct in a consultation with Dr. Brown, who relied on her statements to create an expert conclusion regarding her medical condition.  Thus, the Court finds that Plaintiff has not met the conditions of FRE 502(b) to prevent the waiver of privilege.

For the foregoing reasons, it is by the Court, this 9th day of March, 2011, hereby

**ORDERED** that Plaintiff's emergency motion for a protective order requiring Defendant to delete the two inadvertently sent emails is **DENIED**; and it is,

**FURTHER ORDERED** that the contents of the two emails may be utilized for purposes of discovery, subject to [37] Stipulated Protective Order; and it is,

**FURTHER ORDERED** that Plaintiff's motion to prohibit Defendant from using the two emails for purposes other than discovery in the instant litigation is **DENIED** as beyond the scope of the referral to this Court.

**SO ORDERED.**

 Date:  March 9, 2011                           _____/s/_____

                                         ALAN KAY
                                         UNITED STATES MAGISTRATE JUDGE